UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL SATKOWIAK,

                Plaintiff,                      Case No. 1:23-cv-13096

v.                                                    Honorable Thomas L. Ludington
                                                           United States District Judge
DANIELLE MCCLAIN, et al.,

                Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, STAYING CASE, AND DENYING PLAINTIFF'S MOTION TO AMEND WITHOUT PREJUDICE**

Plaintiff Paul Satkowiak owns 16 acres of land in Mount Forest Township, Michigan. But many acres of his land include protected wetlands, which Plaintiff has allegedly polluted and destroyed in violation of state law. In April 2023, the Michigan Department of Environment, Great Lakes, and Energy (EGLE)—in conjunction with the Michigan Attorney General—filed civil, environmental-enforcement proceedings in the Ingham County Circuit Court against Plaintiff, his wife Prizza Satkowiak, and their company P&P Contracting Services, Inc. EGLE alleges these state defendants—including Plaintiff—illegally dredged, drained, and polluted the wetlands with hazardous sugar-beet-production waste. In July 2023, the Ingham County Circuit Court issued a preliminary injunction which authorized EGLE to routinely "inspect" Plaintiff's land for compliance with state environmental statutes, required EGLE to provide advance notice of any inspection, and allowed Plaintiff the opportunity to object to any such inspections.

But the injunction said nothing about sample collection. On December 5, 2023, during a routine inspection, three EGLE employees collected soil and water samples from Plaintiff's property. Although armed with the state-court preliminary injunction, the EGLE employees did

not have a warrant and did not seek Plaintiff's consent to sample his soil and water. Accordingly, in December 2023, Plaintiff sued the three EGLE employees, primarily alleging their sample collection was an unreasonable seizure, in violation of the Fourth Amendment.

In February 2024, Defendants filed a joint motion to dismiss arguing that *Younger* and *Burford* abstention doctrines compel this Court to decline subject matter jurisdiction and, alternatively, arguing that Plaintiff fails to state a claim. Two weeks later, Plaintiff filed a motion to amend his complaint to add a count challenging the constitutionality of relevant Michigan environmental statutes.

For reasons explained below, Defendants' Motion to Dismiss will be granted in part, the above-captioned case will be stayed under the *Younger* abstention doctrine, and Plaintiff's Motion to Amend will be denied without prejudice.

I.

A.

Plaintiff Paul Satkowiak owns a 16-acre property located on Cody-Estey Road in Mount Forest Township, Michigan. ECF No. 8 at PageID.17. Many acres of Plaintiff's property include regulated wetlands. *Id.* at PageID.18.

On April 21, 2023, the Michigan Department of Environment, Great Lakes, and Energy (EGLE)—in conjunction with the Michigan Attorney General—sued Plaintiff, Prizza Satkowiak, and P&P Contracting Services, Inc ("P&P") (collectively, the "State Defendants") in the 30th Circuit Court in Ingham County, Michigan alleging they were destroying parts of these wetlands in violation of Michigan's Natural Resources and Environmental Protection Act (NREPA). *Id.*; *see also* Garret Ellison, *Michigan AG Sues Couple Who Filled Wetlands With Sugar Beet Waste*,

MLIVE (May 2, 2023, 7:12 AM), https://www.mlive.com/public-interest/2023/05/michigan-ag-sues-couple-who-filled-wetlands-with-sugar-beet-waste.html [https://perma.cc/R8LP-AHUH].

Although this state proceeding is ongoing, neither Party in this federal case has provided a copy of EGLE's state complaint, which would explain the relationship between the State Defendants and would contain the precise allegations against each. However, Michigan Attorney General press releases reflect that P&P is a "contracting company that hauls and disposes of production waste from sugar beet processing [plants] in Bay County." Press Release, Mich. Dep't of Att'y Gen., Department of Attorney General and EGLE Take Action Against Bay County Contractor for Illegal Destruction of Wetlands (Apr. 27, 2023) (available at https://www.michigan.gov/ag/news/press-releases/2023/04/27/department-of-attorney-general-and-egle-take-action-against-bay-county-contractor [https://perma.cc/MQ8T-4XNT]). Prizza serves as P&P's resident director and president while Plaintiff serves as P&P's operator. *Id.* EGLE alleged that P&P "illegally dredged and drained surface water from the wetlands" on Plaintiff's property "and filled nearly five acres of the wetlands with, among other things, harmful sugar beet production waste" resulting in "the harmful discharge of injurious materials into state waters." *Id.*

On July 26, 2023, the Ingham County Circuit Court granted EGLE's motion for a preliminary injunction[1] such that the State Defendants were "restrained and enjoined" from:

> (1) Depositing any additional fill material, regardless of its nature, in any area of [Plaintiff's] Property alleged by EGLE to be existing or filled wetland . . . without maintaining soil erosion and sedimentation control measures;
> (2) Dredging materials from any area of [Plaintiff's] Property alleged by EGLE to be existing or filled wetland . . . ;
> (3) Making any further adjustments to [Plaintiff's] Property causing further draining of any surface water or ground water from any area of [Plaintiff's] Property alleged by EGLE to be existing or filled wetland . . . ;

---

[1] The Ingham County Circuit Court had already issued a temporary restraining order against the State Defendants and accordingly "converted" the restraining order into the preliminary injunction issued on July 26, 2023. ECF No. 10-1 at PageID.66; *see also* ECF No. 17-2 at PageID.190.

> (4) Undergoing any further earth-change or construction activity in any area of [Plaintiff's] Property alleged by EGLE to be existing or filled wetland . . . except as necessary to prevent soil erosion and sedimentation of waters of the state;
> (5) Installing a septic field, well, or any structure, or foundation of any structure, in any area of [Plaintiff's] Property alleged by EGLE to be existing or filled wetland . . . ;
> (6) Taking any other actions that would be inconsistent with restoration of the filled wetlands . . . ; and
> (7) Listing the property for sale . . . without first providing EGLE with advance notice and the opportunity to seek appropriate relief from this Court[.]

ECF No. 10-1 at PageID.66–67. Importantly, the injunction also required the State Defendants (including Plaintiff) to "provide EGLE with access to [Plaintiff's] Property to conduct inspections every six weeks" so long as EGLE provided three-days' notice of any planned inspection and the State Defendants did not file an inspection objection. *Id.* at PageID.67–68. If the State Defendants objected to any planned inspection, the inspection would be stayed until the Ingham County Circuit Court resolved the objection. *See id.*

The first inspection occurred uneventfully on October 2, 2023. ECF No. 17-2 at PageID.191; *see also* ECF No. 17-1 at PageID.151. When EGLE notified the State Defendants of another inspection on November 21, 2023, the State Defendants objected, in part because the first inspection took over two hours. ECF No. 17-2 at PageID.191. After EGLE explained that the length of the inspection was warranted by the significant size and poor navigability of Plaintiff's property, *id.*, the Ingham County Circuit Court overruled the State Defendant's inspection objection and the inspection occurred on December 5, 2023. ECF No. 17-1 at PageID.152.

The December 5, 2023 inspection began around 11:00 AM when EGLE employees Danielle McLain, Sam Noffke, and Kelly Turek entered Plaintiff's property. ECF No. 8 at PageID.18. The inspection lasted nearly three hours, during which McLain, Noffke, and Turek

collected "water and soil samples" from Plaintiff's property.[2] *Id.* at PageID.19; *see also* ECF No. 10 at PageID.40. Aside from the state preliminary injunction authorizing an "inspection," McLain, Noffke, and Turek did not have a warrant or otherwise seek Plaintiff's consent to take soil and water samples from his property. ECF No. 8 at PageID.19–20. During the inspection, Plaintiff's attorney was present, and told all others present that the sample collection was not authorized by the state preliminary injunction. *Id.* Michigan Assistant Attorney General Echo Aloe—who was also present during the inspection—allegedly "declared" that the samples could be collected, regardless. *Id.* at PageID.20.

**B.**

On December 12, 2023, Plaintiff filed his First Amended Complaint against Defendants McLain, Noffke, and Turek in their personal and official capacities. ECF No. 8. In Count I, Plaintiff alleges Defendants unreasonably seized Plaintiff's soil and water, in violation of the Fourth Amendment and 42 U.S.C. § 1983. *Id.* at PageID.20–21. In Count II, Plaintiff seeks a "claim-and-delivery / replevin judgment" to effectuate the return of the sampled soil and water. *Id.* at PageID.21.

On February 9, 2024, Defendants filed a Motion to Dismiss both counts arguing (1) the *Younger* and *Buford* abstention doctrines apply because the Ingham County Circuit Court proceedings are ongoing; (2) Plaintiff's Fourth Amendment rights were not violated because the state preliminary injunction and state statutes authorized Defendants' December 5, 2023 inspection and sample collection and qualified immunity shields Defendants' personal capacity liability; and

---

[2] The Parties have not yet indicated how many samples were taken during the inspection, how large each sample was, nor what happened to the samples after Defendants collected them on December 5, 2023.

(3) Plaintiff failed to state a valid claim-and-delivery claim because his Complaint did not comply with state statutory requirements. *See* ECF No. 10.

Later that same month, as Defendants' Motion to Dismiss was pending, Plaintiff filed a motion for leave to file a second amended complaint which would add a third count alleging that the Michigan environmental statutes which Defendants claim authorized their sample collection violate the Fourth Amendment.[3] ECF No. 16

For reasons explained below, this case will be stayed pending the ongoing Ingham County Circuit Court proceedings, Defendants' Motion to Dismiss will be granted in part to the extent it argues abstention is applicable, and Plaintiff's Motion to Amend will be denied without prejudice.

## II.

Defendants argue that both *Burford* and *Younger* abstention doctrines require this Court to abstain from exercising subject-matter jurisdiction over the above-captioned case, under Civil Rule 12(b)(1). ECF No. 10 at PageID.42, 46, 48; *see also Doe v. Lee*, No. 3:21-CV-00809, 2022 WL 1164228, at *3 (M.D. Tenn. Apr. 19, 2022) (noting dismissals on the basis of abstention are sought under Civil Rule 12(b)(1) rather than 12(b)(6)). Each abstention doctrine will be discussed in turn.

---

[3] Approximately six months after initiating the above-captioned case, Plaintiff—and his wife, Prizza (who is also a State Defendant)—sued two other EGLE employees, alleging another inspection violated the Fourth Amendment, and alleging Michigan environmental statutes violate the federal Constitution. *Satkowiak, et al. v. Marshall, et al.*, Case No. 24-cv-11229 (E.D. Mich. 2024), ECF No. 1. Notably, the challenged inspection in that case arose from citizen complaints, not the Ingham County Circuit Court proceedings or injunction at issue here. *Satkowiak, et al. v. Marshall, et al.*, Case No. 24-cv-11229 (E.D. Mich. 2024), ECF Nos. 7-1 at PageID.61;7-3 at PageID.67. Further, the defendants in that case are not alleged to have collected soil or water samples, but instead merely entered and searched plaintiffs' property without a warrant or consent. *Satkowiak, et al. v. Marshall, et al.*, Case No. 24-cv-11229 (E.D. Mich. 2024), ECF No. 1 at PageID.2-3. And, unlike the above-captioned case, which involves Plaintiff's property in Mount Forest Township, Michigan, Plaintiff and Prizza's case challenges an inspection that occurred on another property they own in Fraser Township, Michigan. *Id.*

### A. *Burford* Abstention

The *Burford* abstention doctrine dates back to a 1943 "conflict involving state oversight of oil fields in Texas." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir. 2009). In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), plaintiff Sun Oil Co. challenged, on Fourteenth Amendment grounds, the reasonableness of a Texas Railroad Commission order granting defendant Burford an oil-drilling permit. *Id.* at 317–18. The Texas legislature created a centralized system of judicial review of Commission decisions, which prompted Texas state courts to acquire specialized knowledge of the oil industry and relevant regulation. *Id.* 325–27. The Supreme Court held that the federal district court should have abstained from reviewing Sun Oil's constitutional claim because the Texas legislature had promulgated an "expeditious" and "unified method for the formation of policy and determination of cases" by the state's Railroad Commission and courts, such that federal court intervention would comparably lead to delay and conflicting interpretations of complex state statutory schemes. *Id.* at 333–34.

As evolved from this case, the modern *Burford* abstention doctrine provides:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 480 (6th Cir. 2004).

Accordingly, *Burford* abstention typically applies to protect "complex state administrative processes from undue federal interference." *NOPSI*, 491 U.S. at 361. However, *Burford* abstention

is not warranted *solely* because a state administrative process is available to a federal plaintiff. Instead, the key question is whether an erroneous federal court decision could impair the state's effort to implement its own policy. *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009); *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir.2004) ("Because *Burford* abstention is concerned with the potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, looking behind the action to determine whether it implicates the concerns of *Burford* is necessary."); *Ada–Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983).

Applying this standard to the scant facts provided by the Parties, *Burford* abstention is inapplicable at this juncture. "Most obviously, acting on [Plaintiff's] claims would in no way 'interfere with the proceedings or orders of state administrative agencies.'" *Habich v. City of Dearborn*, 331 F.3d 524, 532 (6th Cir. 2003). Although EGLE is a state administrative agency, it availed itself of the state *judiciary*, under state environmental statutes promulgated by the state *legislature.* Indeed, the state injunction central to this case is under the control and authority of the Ingham County Circuit Court, not EGLE or any other state agency. And even if *Burford* was applicable simply because a state administrative agency—EGLE—*initiated* the underlying state proceedings, *Burford* abstention would still be inappropriate because the instant federal case "does not concern a disputed issue of state law, but rather a potential conflict between state and federal . . . laws." *Habich*, 331 F.3d at 533; *GTE N., Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000).

Nor does this case seem to fall within the second *Burford* prong as one in which "exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. 350, 361 (1989). Unlike in *Burford*, "where the federal proceedings could conceivably undermine an *entire* regulatory scheme that

depends on uniformity," *Habich*, 331 F.3d at 533 (citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 319 (1943)) (emphasis added), the present case concerns three specific EGLE employees' soil and water sample collection on one specific date. *Burford* abstention is unwarranted.

### B. *Younger* Abstention

Defendants next seek dismissal under Rule 12(b)(1) and the *Younger* abstention doctrine. ECF No. 10 at PageID.43. Unlike *Burford* abstention, *Younger* abstention is both applicable and appropriate, and warrants a stay pending the conclusion of the ongoing Ingham County Circuit Court proceedings.

In *Younger v. Harris*, plaintiff John Harris filed a *federal civil* complaint alleging that his First and Fourteenth Amendment rights were being violated by his ongoing *state criminal* prosecution. *Younger v. Harris*, 401 U.S. 37, 39–42 (1971). The federal district court enjoined and restrained the state prosecution because, in its view, the at-issue state criminal statute was vague and overbroad, in violation of the federal constitution. *Id.* at 40. But the Supreme Court reversed, noting the interests of equity and comity demanded abstention because "[s]ince the beginning of this county's history Congress has, subject to a few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Id.* at 43–44. Thus, the *Younger* abstention doctrine was born.

Since its inception in 1971, the Supreme Court has expanded the *Younger* abstention doctrine such that it currently applies, as a threshold matter, to (1) ongoing state *criminal* prosecutions; (2) ongoing state *civil* enforcement proceedings "akin to criminal prosecutions;" and (3) ongoing state *civil* proceedings involving orders "uniquely" tied to the state court's ability to perform its judicial functions. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, ("*NOPSI*") 491 U.S. 350, 368 (1989); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013).

Even if the state proceeding "is found to fit into one of the three . . . categories listed above," federal abstention is only appropriate when: "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982)).

Further still, even if all three factors are satisfied in a case involving an applicable state proceeding, "a plaintiff still has the opportunity to show that an exception to *Younger* applies." *Id.* 371. Exceptions include (1) bad faith; (2) harassment, or (3) flagrant unconstitutionality of the statue or rule at issue. *Id.*

Accordingly, the *Younger* abstention analysis is best distilled into three tiers—applicability, merits, and exceptions. Each tier will be addressed in turn.

### 1. Applicability: *NOPSI* Categories

The first tier of the *Younger* abstention analysis requires courts to determine whether the state proceedings at issue are one of three kinds to which *Younger* abstention applies in the first instance: (1) ongoing state criminal prosecutions; (2) ongoing state civil enforcement proceedings "akin to criminal prosecutions;" and (3) ongoing state *civil* proceedings involving orders "uniquely" tied to the state court's ability to perform its judicial functions. *See NOPSI*, 491 U.S. 350, 368 (1989); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013).

The underlying Ingham County Circuit Court proceedings squarely fall within the second *NOPSI* category. Ongoing state civil-enforcement proceedings are "akin to criminal prosecution" when they are initiated, typically by some "state actor" to "sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Sprint Commc'ns, Inc. v. Jacobs*, 571

U.S. 69, 79-80 (2013). All boxes are ticked, here. The underlying Ingham County Circuit Court proceedings were brought by EGLE and the Michigan Attorney General—both state actors—to sanction Plaintiff for his alleged wrongful pollution of regulated wetlands with hazardous waste. ECF No. 10 at PageID.39; ECF No. 12 at PageID.76.

The underlying, ongoing Ingham County Circuit Court proceedings may also fall within the third *NOSPSI* category, as they concern the Circuit Court's ability to perform its own judicial functions. In *Pennzoil Co. v. Texaco, Inc.*, the Supreme Court expressly explained that *Younger* abstention is warranted when the underlying, ongoing state proceedings involve "enforcing the orders and judgments" of the state court itself. 481 U.S. 1, 2 (1987). Here, the Ingham County Circuit Court expressly authorized EGLE's "inspections" on Plaintiff's property by issuing a preliminary injunction. ECF No. 10-1 at PageID.67–68. This injunction is still in effect, inspections are still being carried out, and the Circuit Court may at any time clarify the scope of what the injunction authorizes—especially when the injunction allows all Parties to object to inspections *in state court*. *Id.*; *see also EGLE v. P&P Contracting Services Inc., et al*, 23-000246 (30th Cir. Court, Ingham County, Mich. 2023), ECF Nos. 167; 170. This Court's review of the constitutionality of one aspect of the December 5, 2023 inspection necessarily interferes with the Ingham County Circuit Court's ability to enforce its own injunction—which authorized the inspection in the first instance.[4] *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013).

---

[4] Relevant to this point, Plaintiff repeatedly suggests that his federal case is separate and apart from the underling state proceedings and frames the relevant inquiry as solely challenging the constitutionality of Defendants' December 5, 2023 sample collection. *See, e.g.*, ECF No. 12 at PageID.80, 90-92, 95–96. In so doing, Plaintiff repeatedly misstates and minimizes the scope of his own case. True, Plaintiff asserts a federal Fourth Amendment claim challenging the reasonableness of Defendants' sample collection. But the sample collection cannot be considered without also considering the ongoing Ingham County Circuit Court proceedings and preliminary injunction. Although the injunction is silent on sample collection, it unquestionably authorized Defendants to "inspect" Plaintiff's property, ECF No. 10-1 at PageID.67–68. And Defendants

In sum, the underlying Ingham County Circuit Court proceedings fall within two of the three categories of proceedings to which *Younger* abstention applies.

## 2. Merits: *Middlesex* Factors

Having concluded *Younger* abstention applies to the underlying Ingham County Circuit Court proceedings under the *NOPSI* categories, this Court turns to whether abstention is appropriate under the *Middlesex* factors.

### a.

The first *Middlesex* factor weighs in favor of *Younger* abstention when the "state proceedings are currently pending." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982)). Under the so-called "day-of-filing" rule, this factor is satisfied if the state proceedings are pending on the day the Plaintiff sues in federal court. *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 701 (6th Cir. 2013) (citing *Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir.1991)). This factor favors abstention here. Plaintiff filed his federal Complaint on December 6, 2023, ECF No. 1, while the Ingham County Circuit Court proceedings were pending against him. *See EGLE v. P&P Contracting Services Inc.*, *et al*, 23-000246 (30th Cir. Court, Ingham County, Mich. 2023). Indeed, the Ingham County Circuit Court proceedings remain pending against Plaintiff.[5] *See id.* (reflecting "open" case status and ongoing inspections).

---

went to Plaintiff's property on December 5, 2023 specifically to carry out an inspection authorized by the injunction, and seemingly believed this authorization *included* the ability to collect soil and water samples. If this Court ruled Defendants inspections were unconstitutional, it would be practically enjoining Defendants—state administrative employees—from enforcing state environmental statutes and carrying out state court orders in the way they best see fit.

[5] Plaintiff argues to the contrary because, in his view, since he is contesting the constitutionality of one seemingly isolated seizure, the state proceedings are not sufficiently "ongoing" to warrant abstention. ECF No. 12 at PageID.95 ("The State Court Judge and the relevant procedures have not violated the Fourth Amendment[] . . . Defendants did[,] and did so outside the contours of the

**b.**

The second *Middlesex* factor analyzes whether the pending state proceedings involve an "important state interest." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982)). Unquestionably so, here. As recognized by the Sixth Circuit, "[t]he State of Michigan has an overriding interest in the protection of its environment from the effects of . . . hazardous wastes." *Ada-Cascade Watch Co. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 904 (6th Cir. 1983).

Plaintiff argues to the contrary because, in his view, the instant federal case involves a seizure allegedly in violation of the Fourth Amendment and has nothing to do with Michigan's environmental interests. ECF No. 12 at PageID.96. But Plaintiff ignores the relevant analysis. When analyzing the second *Middlesex* factor, federal courts look to the interests implicated in the *underlying state* proceeding, not the instant federal litigation. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433-34 (1982); *see also Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 640 (6th Cir. 1990) ("[U]nder the second prong of the *Younger* test, the district court does not weigh the state interest against any countervailing federal interest."). And the underlying Ingham County Circuit Court proceedings involve Michigan's important interest in enforcing its own environmental statutes and ensuring that its regulated wetlands are free from hazardous pollution. Thus, the second *Middlesex* factor favors abstention.

---

state-court civil case. . . . Plaintiff asserts that the operative "proceeding" is not the pending court case but the December 5, 2023 search . . . which has already and completely concluded." (emphasis omitted)). But Plaintiff provides no precedent supporting his conclusion that "proceedings," as used for *Younger* abstention purposes, refer to anything other than the literal *legal* proceedings unquestionably still pending in state court. *See id.* Moreover, although Plaintiff currently contests the constitutionality of the December 5, 2023 alleged seizure, EGLE is still seemingly carrying out inspections every six weeks, ECF No. 10-1 at PageID.67. Indeed, the state court record reflects that *five* inspections have occurred, the most recent of which on June 10, 2024. *See EGLE v. P&P Contracting Services Inc., et al*, 23-000246, ECF No. 172.

**c.**

The third and final *Middlesex* factor favors abstention when the state proceedings provide the federal plaintiff with an adequate opportunity to raise their constitutional claims. *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34 (1982)). Importantly, plaintiffs bear the burden of showing the state court proceedings are inadequate. *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001). Here, Plaintiff argues he cannot adequately assert his federal Fourth Amendment claims in Ingham County Circuit Court because, "[u]nder ghastly Michigan law, any violations of the Fourth Amendment are supposed to be dealt with in a subsequent civil rights lawsuit and not in the state-court civil proceedings." ECF No. 12 at PageID.91, 94–95 (citing *Long Lake Twp. v. Maxon*, 997 N.W.2d 250 (Mich. Ct. App. 2022), *aff'd*, No. 164948, 2024 WL 1960615 (Mich. May 3, 2024)). This Court is not convinced.

In *Maxon*, Long Lake Township filed a state court action against Todd Maxon, alleging Maxon violated local zoning ordinances by storing junk cars on his property. *Long Lake Twp. v. Maxon*, No. 164948, 2024 WL 1960615, at *2 (Mich. May 3, 2024). The parties settled, and Maxon agreed he would "maintain[] the status quo" on his property, in exchange for the lawsuit's dismissal. *Id.* But, years later, Maxon's neighbors complained to Township officials that Maxon was storing excessive junk on his property. *Id.* So, the Township "hired a contractor to take aerial photographs and video of the . . . property[.]" *Id.* Using the photographs and video to support its case, the Township then sued Maxon again, this time alleging Maxon had expanded the junk on his property, in violation of local zoning and nuisance ordinances. *Id.*

Accordingly, Maxon filed a motion to suppress the aerial photos and videos taken of his property, arguing they violated both the Michigan Constitution and, importantly, the *Fourth*

*Amendment* of the United States Constitution. *See id.* Although the state trial court denied Maxon's motion, the state appellate court reversed, concluding that the photos constituted an unreasonable, warrantless search, and remanded for the trial court with instructions to suppress. *Id.* The Township appealed to the Michigan Supreme Court, which vacated and remanded to the state appellate court to consider whether, *assuming a Fourth Amendment violation*, the exclusionary rule justified suppression. *See id.* The state appellate court concluded that the Fourth Amendment's exclusionary rule did not apply in that specific civil zoning case, and the Michigan Supreme Court affirmed in May 2024. *See id.* at *2, *8.

Plaintiff argues that, under *Maxon*, he cannot bring his Fourth Amendment claim in state court. ECF No. 12 at PageID.91, 94-95 (arguing his "only remedy is to bring another case"). But *Maxon* says nothing of the sort. In *Maxon*, the state civil defendant *filed a motion claiming his Fourth Amendment rights were violated*, the very thing Plaintiff argues the case prevents him from doing. *See Long Lake Twp. v. Maxon*, 997 N.W.2d 250, 252 (Mich. Ct. App. 2022), *aff'd*, No. 164948, 2024 WL 1960615 (Mich. May 3, 2024). The sole issue on appeal in *Maxon* was whether—assuming state-defendant's Fourth Amendment rights were violated—the fruits of the violation should be suppressed in that specific civil zoning case. *Maxon*, 2024 WL 1960615, at *6 ("Viewing these cases as a whole, it is clear that application of the exclusionary rule "involves weighing the costs and benefits in each particular case."). But Plaintiff does not seek suppression in the instant federal case, which has nothing to do with zoning. Instead, Plaintiff seeks a declaratory judgment that his Fourth Amendment rights were violated, the return of the collected samples, and the destruction of any corresponding data—relief the Ingham County Circuit Court is perfectly capable of providing, if justified on the merits. *See* ECF No. 1 at PageID.6. Contrary to Plaintiff's cherry-picking, neither the Michigan Court of Appeals nor the Michigan Supreme

Court held in *Maxon* that a state defendant must turn to federal court to assert their Fourth Amendment rights.

Plaintiff has not met his burden in establishing that the Ingham County Circuit Court is an inadequate forum for his constitutional claims. The third *Middlesex* factor favors abstention. Indeed, with a score of 3-0, the *Middlesex* factors unanimously favor abstention in this case.

### 3. Exceptions

Finding all *Middlesex* factors warrant *Younger* abstention, this Court turns to whether any abstention exceptions apply.

Plaintiff argues only that the "flagrant unconstitutionality" exception applies because "Defendants clearly and unquestionably violated the Fourth Amendment by conducting seizure(s) when the authorizing [injunction] does not" describe the things to be seized with any particularity. ECF No. 12 at PageID.93–94. But showing "flagrant unconstitutionality" is an incredibly "high bar" and Plaintiff has not hurdled it here. *See Doe v. Univ. of Kentucky*, 860 F.3d 365, 371 (6th Cir. 2017); *see also Younger v. Harris*, 401 U.S. 37, 53–54 (noting the exception for flagrantly unconstitutional laws is only available if the underlying state law is "patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it" (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941))); *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986) (noting "the Supreme Court has never found" the flagrant unconstitutionality exception "to be applicable since it first announced the exception in *Younger*").

Plaintiff argues that Defendants' inspection, authorized by a state court injunction and Michigan statute, "flagrantly violated the Fourth Amendment," ECF No. 12 at PageID.94, but, when framing the issue, Plaintiff submits that the challenged unconstitutional conduct (the sample

- 16 -

collection) is *not* authorized by Michigan statute, or the state court preliminary injunction. Thus, inherently, Plaintiff has not shown that the relevant state statutes or injunction were "patently violative of express constitutional provisions in every clause, sentence and paragraph," and in every application. *See Younger*, 401 U.S. at 53–54. True, in a separate motion, Plaintiff seeks to amend his complaint to assert that applicable Michigan statutes are unconstitutional. *See* ECF No. 16. But this does not establish flagrant unconstitutionally to afford federal review in a case in which abstention is otherwise warranted, especially when Plaintiff has not shown he could not adequately contest the constitutionality of the *state* law in *state* court.

### 4. Recourse

Having concluded *Younger* abstention is applicable, appropriate, and no exception applies, this Court turns to the right recourse. Defendants seek dismissal while Plaintiff seeks a stay. *Compare* ECF No. 10 at PageID.63 *with* ECF No. 12 at PageID.96, n. 16.

"Whether the plaintiff[] seek[s] a legal versus an equitable remedy controls how the district court disposes of the case after holding that the *Younger* doctrine applies to it." *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 702 (6th Cir. 2013). "If the plaintiff[] seek[s] equitable relief, such as an injunction, then the district court may exercise its discretion and decide whether to dismiss the case" or stay it, pending the conclusion of the ongoing state court proceedings. *Id.* If the plaintiff seeks "purely legal relief," such as damages, the district court does not have discretion to dismiss, and must instead stay. *Id.* (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996)). When the plaintiff seeks *both* equitable and legal relief, the district court should stay, rather than dismiss, to "protect against the possibility that the [plaintiff] could be deprived the opportunity to present the merits of [their] claims" and to avoid future statute of limitations issues.

- 17 -

*Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1076 (6th Cir. 1998); *see also Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010); *James v. Hampton*, 513 F. App'x 471, 476 (6th Cir. 2013).

Plaintiff seeks both equitable relief and damages. *See* ECF No. 8 at PageID.22. So, having concluded *Younger* abstention is applicable and appropriate, this Court will stay the above-captioned case pending the conclusion of the Ingham County Circuit Court proceedings. In the meantime, Plaintiff's Motion to Amend, ECF No. 16, will be denied without prejudice.

### III.

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 9, is **GRANTED IN PART**, to the extent it seeks to apply *Younger* abstention to the above-captioned case.

Further, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 9, is **DENIED IN PART,** in all other respects.

Further, it is **ORDERED** that the above-captioned case is **STAYED** pending the closing of proceedings in *EGLE v. P&P Contracting Services Inc.*, *et al*, 23-000246 (30th Cir. Court, Ingham County, Mich. 2023).

Further, it is **ORDERED** that the Parties are **DIRECTED** to notify this Court when the state court proceedings in *EGLE v. P&P Contracting Services Inc.*, *et al*, 23-000246 (30th Cir. Court, Ingham County, Mich. 2023) have concluded and the Parties accordingly seek to lift the stay.

Further, it is **ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint, ECF No. 16, is **DENIED WITHOUT PREJUDICE.**

Dated: July 16, 2024  s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge